IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL ACTION NO. 2:18-cr-00295

JOHN DELANEY WILSON,

MEMORANDUM OPINION AND ORDER

Pending before the court is Defendant John Delaney Wilson's Motion for Compassionate Release, [ECF No. 38]. The court in deciding such motions will consider the following: whether the defendant has exhausted his or her administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and the § 3553(a) factors. In deciding what constitutes "extraordinary and compelling reasons" for release by reason of COVID-19, the defendant must demonstrate that he or she has a medical condition listed by the Centers for Disease Control and Prevention as causing an increased risk of severe illness from COVID-19 and that he or she is at a facility which cannot effectively prevent the spread of the virus. For the reasons that follow, the Motion is **DENIED without prejudice**.

I.  Background

On August 1, 2019, I sentenced Mr. Wilson to a term of 33 months

imprisonment followed by 3 years of supervised release for Possession with Intent to Distribute Heroin, in violation of 21 U.S.C. § 841(a)(1). [ECF No. 32]. Defendant is currently serving his sentence at Federal Correctional Institution ("FCI") Milan. According to the Bureau of Prisons ("BOP"), his projected release date is August 31, 2021.

After being incarcerated in September of 2019, Mr. Wilson was diagnosed with mild intermittent asthma. Ex. D [ECF No. 43]. Previously, Mr. Wilson's asthma had been inactive for several years. *Id.* The doctor treated him for an exacerbation and also placed him on an additional inhaler for a total of two inhalers. *Id.* His second medication—in addition to his standard albuterol inhaler—is mometasone furorate (Asmanex). *Id.* Asmanex is an inhaled corticosteroid which is prescribed to provide anti-inflammatory action in the lungs. Def.'s Mot. Supp. [ECF No. 43] 4. It is used as maintenance treatment to prevent and control asthma attacks. *Id.* Prior to this point, Mr. Wilson had not required a steroid to control his asthma. *Id.* He was reevaluated by Dr. Scherle on December 19, 2019, and his symptoms were well managed at that time. Ex. D [ECF No. 43]. "At no time during the incarceration did he fit into 'moderate persistent or severe persistent asthma.'" *Id.*

This past April, Mr. Wilson was placed in FCI Milan's C-Unit, a unit that was designed to place inmates who were "at risk for Covid-19" together to try and mitigate possible exposure. Ex. B [ECF No. 43]. In June, one inmate in the unit tested positive. *Id.* The decision was then made to test all inmates in the unit, which uncovered several more positive tests. *Id.* However, BOP writes that Mr. Wilson did not have

2

any comorbidities and was likely placed into the C-Unit because he was given two inhalers last December. *Id.*

FCI Milan is a low security federal correctional institution with a detention center located in Milan, Michigan. It houses a total of 1,362 inmates. *FCI Milan*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/mil/ (last visited July 23, 2020). As of July 23, 2020, three inmates have died of COVID-19 at FCI Milan, 96 inmates and 55 staff have been infected and recovered, and 3 inmates and 1 staff member are currently positive. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited July 23, 2020).

Mr. Wilson requested compassionate release from the Warden of FCI Milan on May 6 and May 14, citing his underlying health condition of asthma. *See* Ex. C [ECF No. 43]. The Warden denied those requests on June 11. *Id.* Mr. Wilson now asks the court for compassionate release because of his underlying medical condition and the current public health crisis caused by COVID-19. [ECF No. 38].

## II. Discussion

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations removed); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to

the BOP no longer makes sense now that the First Step Act has reduced the BOP's role.").

For me to reduce Mr. Wilson 's sentence under compassionate release, I must find that Mr. Wilson has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons," is not a danger to the safety of others, and find that his release is consistent with § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); U.S.S.G. § 1B1.13 (2018). As I will explain, to find "extraordinary and compelling reasons" exist by reason of COVID-19, Mr. Wilson must demonstrate that he has a medical condition listed by the Centers for Disease Control and Prevention ("CDC") as causing an increased risk of severe illness from COVID-19 and that he is at a facility which cannot effectively prevent the spread of the virus.

### a) Exhaustion of Administrative Remedies and Section 3582(c)(1)(A)

The First Step Act empowers criminal defendants to request compassionate release for "extraordinary and compelling reasons." 18 U.S.C § 3582(c)(1)(A)(i). But before they make such requests, defendants must ask BOP to do so on their behalf and then wait 30 days. *See* § 3582(c)(1)(A). Upon such a motion from BOP or from a defendant (after BOP denies the request or thirty days have elapsed since the request was filed), a court "may reduce the term of imprisonment…." 18 U.S.C. § 3582(c)(1)(A)(i). Mr. Wilson made his request to the Warden on May 6 and May 11. Thus, the requisite 30 days has passed, and Mr. White has satisfied administrative exhaustion.

4

b) **Extraordinary and Compelling Reasons**

Once an inmate has satisfied administrative exhaustion, courts may reduce their sentences upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A).

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release."[1] *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18, 2020). But many courts have found "extraordinary and compelling" reasons "supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from COVID-19."[2] *See e.g.*, *Bass*, 2020 WL 2831851, at *7 (citing *e.g.*, *Rodriguez*, 2020 WL

---

[1] The specific extraordinary and compelling reasons listed in the Sentencing Guidelines for BOP to consider include i) the defendant is suffering from a terminal or serious medical condition; ii) age of defendant; iii) family circumstances of defendant; and iv) "other reasons." U.S.S.G. § 1B1.13; *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *3–4 (N.D.N.Y. May 27, 2020). "Following the passage of the First Step Act, courts may independently determine whether such 'other reasons' are present in a given case, without deference to the determination made by the BOP." *United States of America v. Thaher,* No. 17 CR. 302-3 (KPF), 2020 WL 3051334, at *4 (S.D.N.Y. June 8, 2020).

[2] "Section 1B1.13 of the United States Sentencing Guidelines contains the only policy statement issued by the Sentencing Commission pertaining to compassionate release," which has not been updated since the passage of the First Step Act. *See Bass*, 2020 WL 2831851, at *3; U.S.S.G. § 1B1.13.[2] Thus, courts have taken this to mean that "there does not currently exist, for purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" *See e.g., United States v. Redd*, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020); *United States v. Brant*, No. 218CR20155TGBMKM1, 2020 WL 2850034, at *4 (E.D. Mich. June 2, 2020); *United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107, at *3 (C.D. Ill. May 15, 2020).

1627331, at *9 (finding an "extraordinary and compelling reason" on the basis of the inmate's diabetes, high blood pressure, and liver abnormalities, the outbreak at FCI Elkton, and the short period remaining on his sentence); *United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and conditions at FCI Danbury). I previously granted compassionate release to a defendant who was immunocompromised—suffering from a liver disease, Hepatitis C. *See United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *6 (S.D.W. Va. June 12, 2020); s*ee also Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 23, 2020) (listing "immunocompromised state" as an underlying medical condition causing an "increased risk for severe illness from COVID-19").

In addition, many courts rely upon CDC guidance for whether a medical condition constitutes an "extraordinary and compelling" reason for release. *See e.g., United States v. Salvagno*, No. 5:02-CR-51 (LEK), 2020 WL 3410601, at *4 (N.D.N.Y. Apr. 23, 2020), reconsideration denied (June 22, 2020) ("The Centers for Disease Control and Prevention has advised that people with hypertension face an increased risk of severe illness from COVID-19."); *United States v. Nygren*, No. 1:16-CR-00106-JAW, 2020 WL 4208926, at *12 (D. Me. July 22, 2020) ("Based on the medical records in this case and the CDC guidance…"); *United States v. Bell*, No. 18-CR-60115-BB-4, 2020 WL 4217724, at *4 (S.D. Fla. July 23, 2020) ("CDC guidance indicates that

individuals with the following health conditions are at a higher risk of contracting severe illness due to COVID-19…"). And many courts reject compassionate release petitions when the defendant does not suffer from any conditions recognized by CDC as causing an increased risk of severe illness from COVID-19. *See e.g., United States v. Adeyemi*, No. CR 06-124, 2020 WL 3642478, at *19 (E.D. Pa. July 6, 2020) ("Mr. Adeyemi's asthma does not currently fit the Centers for Disease Control and Prevention's high-risk category."); *United States v. Mollica*, No. 2:14-CR-329-KOB, 2020 WL 2811504, at *3 (N.D. Ala. May 29, 2020) ("Ms. Mollica is under 65 and the CDC has not listed the underlying conditions from which she suffers as creating particular risk for COVID-19."); *United States v. Arroyo*, No. 2:19-CR-54-1-TLS-JPK, 2020 WL 3118787, at *4 (N.D. Ind. June 12, 2020) ("High cholesterol is not listed on the CDC website as a risk factor related to COVID-19…"); *United States v. Cosby*, No. 18CR4474-JAH, 2020 WL 3840567, at *4 (S.D. Cal. July 7, 2020) ("CDC has not listed epileptic seizures as a condition that places individuals at a higher risk of severe illness."); *United States v. Frazer*, No. CR 19-110, 2020 WL 2404893, at *2 (E.D. Pa. May 12, 2020) ("Sleep apnea is not listed by the CDC as a serious underlying medical condition that could increase a person's risk for severe illness from COVID-19.").

I join other courts in holding that I cannot find "extraordinary and compelling" reasons exist to grant release because of COVID-19 unless the inmate has a condition that makes him or her more at risk for developing a serious illness from COVID-19 *and* the facility where the inmate is housed has conditions such that its inmates are

at a high risk of contracting COVID-19. *See United States v. Raia*, 954 F.3d 594, 594 (3d Cir. 2020) ("But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release…"); *United States v. Penaloza*, No. 19-238, 2020 WL 1555064, at *2 (D. Md. Apr. 1, 2020) ("[T]he mere presence of the virus, even in the detention setting, does not translate to the release of a person accused.").

In deciding which conditions result in an inmate being a higher risk for COVID-19, I will defer to CDC's list of medical conditions causing an increased risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 23, 2020). Using CDC guidance will allow for more predictable standards in deciding which defendants have "extraordinary and compelling" reasons justifying release.

If an inmate can demonstrate that he or she has a condition identified by CDC, next, the defendant must show that his or her prison conditions are such that BOP cannot effectively prevent the spread of COVID-19. Factors include but are not limited to the steps BOP has taken to stop the spread of COVID-19 in that particular prison and steps to follow CDC guidance, the ability of inmates to socially distance, the amount of hygiene products and face masks provided to inmates, and the number of COVID-19 cases in that prison.

I will note that Attorney General William Barr has twice issued memoranda directing BOP to prioritize the use of home confinement for vulnerable inmates. *See*

*Memorandum for Director of BOP*, https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement_april3.pdf (last visited July 13, 2020) and https://www.justice.gov/file/1262731/download (last visited Jul. 23, 2020). Yet, by all accounts, BOP has resisted calls to release vulnerable inmates to home confinement. Indeed, other district courts have noted their awareness "of the growing evidence of the BOP's chronic mismanagement of its vulnerable population during the COVID-19 pandemic." *Woodard v. United States*, No. 2:12-CR-105, 2020 WL 3528413, at *3 (E.D. Va. June 26, 2020); *see also Wilson v. Williams*, 2020 WL 2542131, at *1–2 (N.D. Ohio May 19, 2020) (documenting the "unacceptable" percentage of positive tests at FCI Elkton and BOP's "ineffective[ness] ... at stopping the spread"). "Even in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) (the likelihood of contracting the virus is greater in prison than if a defendant were able to fully self-isolated at home); *see also See United States v. Stephens*, ⸺ F.Supp.3d ⸺, ⸺, 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020) (discussing the heightened risk presented by a COVID-19 outbreak in a jail or prison versus the community at large). Thus, when looking at whether an inmate is at a prison with a high risk of contracting COVID-19, it is also imperative to recognize the context and failures of BOP to stop the spread of COVID-19 in prisons.

    Here, Mr. Wilson has presented sufficient evidence that FCI Milan is a high

risk facility for contracting COVID-19. The facility has had three inmates die of COVID-19 and over 150 inmates and staff have contracted the virus. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited July 23, 2020). "As evidenced by recent infections among prisoners in the high-risk population, the risk of contracting COVID-19 in FCI Milan remains a daily threat, and that is entirely out of [Defendant's] control." *United States v. Kirschner*, No. 110CR00203JPHMJD, 2020 WL 4004059, at *3 (S.D. Ind. July 15, 2020). "Although the transmission of the virus can be prevented or delayed by taking certain precautions like frequent sanitizing and social distancing, it is very difficult to carry out such practices at FCI Milan (where Defendant is located)." *United States v. Berry*, No. 09-CR-90-JPS, 2020 WL 4001932, at *1 (E.D. Wis. July 15, 2020). Indeed, FCI Milan has been described as an "open dormitory" where inmates "must share property such as telephones, toilets, showers, etc., with approximately 60 other inmates." *Id.* Thus, "[e]ven if the Court were to accept the argument that the BOP and FCI Milan are taking precautions to ensure the safety of prisoners, Defendant's risk of contracting COVID-19 is not speculative. There have been numerous cases of COVID-19 at FCI Milan, both among prisoners and staff." *United States v. Saad*, No. 16-20197, 2020 WL 2251808, at *4 (E.D. Mich. May 5, 2020).

Despite Mr. Wilson being an inmate at a facility with a high risk for contracting COVID-19, he has not presented a medical condition identified by CDC as placing him at a risk for severe illness from the virus. The only medical diagnosis provided to me for Mr. Wilson is for mild intermittent asthma. Ex. D [ECF No. 43]. Although

10

moderate to severe asthma has been identified by CDC as a condition causing an increased risk of severe illness from COVID-19, *see Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 23, 2020), mild asthma has not. In fact, numerous district courts have denied compassionate release where the defendant claimed only mild asthma as his or her condition as opposed to moderate to severe asthma. *See e.g.*, *United States v. Wheeler*, 2020 WL 2801289, at * 3 (D.D.C. May 29, 2020) (denying Compassionate Release because mild asthma does not constitute an extraordinary and compelling reason); *United States v. Perez*, 3030 WL 3639739 (S.D. Cal. July 6, 2020) (finding that "mild intermittent asthma" does not create such a high risk of COVID-19 that it warrants release); *United States v. Slone*, Cr. No. 16-400, 2020 WL 3542196, (E.D. Pa. June 30, 2020) ("Mild persistent asthma alone does not amount to an extraordinary and compelling reason warranting release.").

      At the same time, I am concerned by the allegation that Mr. Wilson's asthma is more severe than "mild." Mr. Wilson had an "exacerbation" of asthma back in September and was given a prescription for a second inhaler, a corticosteroid which is prescribed to provide anti-inflammatory action in the lungs. Def.'s Mot. Supp. [ECF No. 43] 4. Thus, Mr. Wilson argues his "symptoms are more serious than mild asthma." *Id.* In addition, Mr. Wilson was placed in FCI Milan's unit for inmates who are at risk for Covid-19. *Id.* Ex. B [ECF No. 43]. I am further concerned by the allegation that Mr. Wilson has requested refills of his asthma medication, yet "has

11

not been able to obtain a continuing supply of his medication." Def.'s Mot. Supp. [ECF No. 43] 4. "Mr. Wilson reports that the last full-time physician at FCI Milan resigned several months ago and that the 'at-risk' unit in which he is housed was previously vacated due to the presence of asbestos and lead paint, all of which create additional risks for at-risk inmates in general and particularly for inmates with underlying respiratory conditions." *Id.* BOP must fulfill its obligation to protect inmates from COVID-19 and ensure that they are presented with adequate medical care. Because there is evidence that Mr. Wilson's asthma may be more severe than the prison has reported, I **DIRECT** BOP to medically evaluate the severity of Mr. Wilson's asthma within 10 days from the date of this order.

Because Mr. Wilson did not present a medical diagnosis of a condition determined by CDC to make him more at risk for severe illness from COVID-19, I do not find extraordinary and compelling reasons justifying his release. Therefor, I need not determine whether he is a danger to the community or consider the § 3553(a) factors.

III) Conclusion

For the foregoing reasons, Defendant's motion for compassionate release, [ECF No. 38], is **DENIED without prejudice**. I **DIRECT BOP** to medically evaluate Mr. Wilson to determine the severity of his asthma condition within **10 days** from the date of entry of this order. The court further **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal. The court further **DIRECTS** the


Clerk to post a copy of this published opinion on the court's website, www.wvsd.uscourts.gov.

        ENTER:    July 27, 2020

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE